Tatjakebbo, J.
The plaintiffs in this case sue on a contract of insurance. They effected insurance with the defendants to the extent of 87,000, on their interest in the ship S. E. Pettigrew, which was valued in the contract at 840,000. The ship was insured from 27th of July to 27th of August, 1861. This insurance was renewed monthly up to March 27th, 1862, when it was again renewed for the period of one month, ending on the 27th of April, 1862. It appears that on the 25th of April, two days before the policy expired, the ship was destroyed by fire in the port of New Orleans. The insurers are sued for indemnity for the loss. The defence is, that the ¡(vessel was not lost by any of the perils insured against, and that the company is not bound to make good the alleged loss. The defendants had judgment in their favor in the Court below, and the plaintiffs prosecute this appeal.
In the margin of the policy of insurance, the following clause appears: “ Warranted by the assured free from all claim for loss or damage arising from or growing out of the collision of foreign powers, or of our government with others.”
It is under this condition of the contract, that defendant claims exemption from liability. They allege, in their answer, that the ship Pettigrew was destroyed by fire at the time a fleet of vessels of war of the United States was entering the port of New Orleans. That the burning of the vessel was by order of the military authorities then in possession of the city, and about to abandon it; that the act was authorized by the States then at war with the United States. It will be proper here to notice a bill of exceptions taken by the plaintiffs to the admission of statements made by several witnesses, as to what they heard from or were told by others, of orders having been issued or given by the military authorities then in possession of the city, for the destruction of property prior to or about the time of the loss of the ship Pettigrew.
The Court, we think, properly admitted the evidence as part of the res gestee. One of these witnesses (Brown) testified that he “ saw a mob go on board the Pettigrew, and fire her. There was no military in the vicinity. I was on the wharf; the crowd said they were going to fire all the ships at the wharves. They gave no reasons for this. They fired one of my ships. ”
Tobleman, a witness, stated: “I was stationed at the foot of Clouet street, as captain of a company. I saw General Lovell with his staff. He asked me where were my men? I answered they were busy at work. He told me, that inasmuch as the Federal fleet was coming up, to burn all the cotton and ships as soon as possible.”
*392 G. D. Eeriet, a witness, deposed that lie was colonel of the Second Louisiana Regiment; that the orders to burn ships, and cotton in the presses, were transmitted to him; that there was'an order first from the Governor and one from General Lovell, carried by an aide-de-camp. The order was positive, to burn all the cotton in the presses and in the harbor. “ The order of General Lovell, to burn the cotton wherever it was, was verbal;”the order of the Governor was in writing, to the same effect. The testimony of many witnesses concurs in establishing the fact that at the same time the Pettigrew was burned a number of other vessels, .and a large amount of cotton were burned at New Orleans. At that time excitement and consternation pervaded the city. A fleet of United States vessels of war had passed the forts below, and was advancing up the river. The purpose of the insurgent officers about to evacuate the city, it is satisfactorily shown, was to destroy all the cotton in New Orleans, wherever found, whether in the cotton-presses or on shipboard. It is matter of history, that at that time it was the policy of the so-called Confederate authorities to destroy cotton everywhere within reach of the United States forces. That there was an order to burn ships that had cotton on board, there cannot be a remaining doubt. The evidence, -we think, conclusive, in favor of the defendants. That the destruction by fire of the ship Pettigrew, resulted from and grew out of the “collision” between the United States and the insurgent power then in arms against its authority, is satisfactorily established. It is plain, from the contract of insurance, that “ loss or damage arising from or growing out of” that collision, was not a peril insured against.
It is therefore ordered, adjudged and decreed, that the judgment of the. District Court be affirmed, with costs in both courts.
Rehearing refused.